IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARWA CHIROPRACTIC, P.C., an Illinois professional corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. |
| | ) | |
| SUREFIRE FULFILLMENT SERVICES, INC. d/b/a SUREFIRE HEALTH, GARY MILLS, and JOHN DOES 1-12, | ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Arwa Chiropractic, P.C. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, Surefire Fulfillment Services, Inc. d/b/a Surefire Health ("Surefire"), Gary Mills ("Mills"), and John Does 1-12, (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.     This case challenges Defendants' practice of faxing unsolicited advertisements.

2.     Defendants sent advertisements in an attempt to sell Elation Cream, which it markets as a pain management cream.

3.      The federal Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission ("junk faxes" or "unsolicited faxes").

4.      The TCPA mandates that when a person or entity sends a fax advertisement it must always include a very specific opt-out notice that is clearly and conspicuously displayed on the first page of the advertisement. *See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii).

5.      The TCPA provides a private right of action and provides statutory damages of $500 - $1,500 per violation. If the Court finds the advertisements were sent knowingly or willfully, then the Court can treble the damages.

6.      Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

7.      On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA, the

common law of conversion, and the Illinois Consumer Fraud and Deceptive Business Practices Act.

8.  Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

9.  Plaintiff is an Illinois professional corporation with its principal place of business in Aurora, DuPage County, Illinois.

10.  Defendant Surefire Fulfillment Services, Inc. d/b/a Surefire Health is a Utah corporation.  On information and belief, Surefire has its principle place of business in South Jordan, Utah.

11.  On information and belief, Defendant Gary Mills is a resident of South Jordan, Utah.

12.  Plaintiff included Defendants John Does 1-12 as it is not clear whether any entities or persons other than Surefire or Mills actively participated in the transmission of the subject fax advertisements, or benefitted from the transmissions.

13.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

14.  Venue is proper in the Northern District of Illinois because Defendants committed a statutory tort within this district and a significant portion of the events took place here.

## FACTS

15.     On May 8, 2013, Plaintiff received an unsolicited fax advertisement.  Exhibit A, copy of the subject fax advertisement.  The fax advertisement attached as Exhibit A was sent, or caused to be sent, by Defendants.

16.     The subject fax advertises the goods, products or services of Defendant Surefire.  Id.  Exhibit A is a four-page fax that attempts to sell Defendants' product, which is a purported "pain management cream" called "Elation Cream."  Id.  Exhibit A contains information about Defendants' product as well as supposed testimonials from Defendants' customers.  Id.  Exhibit A expressly solicits the recipient to order Defendants' product, and provides a phone number and website through which orders may be placed.  Id.  Defendants sent, or caused this unsolicited fax advertisement to be sent to Plaintiff and a class of similarly-situated persons.

17.     Defendant Mills is the president of Defendant Surefire.  Upon information and belief, Defendant Mills actively participated in the scheme to send the subject unsolicited fax advertisements to persons without first obtaining their express permission in that he drafted the subject fax, actively participated in determining where the subject fax would go, and actively participated in transmitting the subject fax.

18.     Plaintiff did not invite or give permission to anyone to send Exhibit A to it.

19.     On information and belief, Defendants sent the same facsimile to Plaintiff and more than 39 other recipients without first receiving the recipients' express permission or invitation. This allegation is based, in part, on the fact that Plaintiff never gave permission to anyone to send the subject fax advertisement to it, that Plaintiff never conducted business with Defendants, that Defendants are located in Utah, and that sending advertisements by fax is a very cheap way to reach a wide audience.

20.     There is no reasonable means for Plaintiff (or any other putative Class member) to avoid receiving illegal faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

## CLASS REPRESENTATION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of the Class, initially defined as follows:

> All persons who were sent one or more telephone facsimile messages on or after four years prior to the filing of this action, that advertised the commercial availability of property, goods, or services offered by "Surefire Health", that did not contain an opt-out notice that complied with federal law.

22.     Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any Judge assigned to this action, and his or her family.

23.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy requirements under Rule 23 (a). Additionally,

prosecution of Plaintiff's claims separately from the putative Class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

24.     **Numerosity/Impracticality of Joinder**:  On information and belief, the Class consists of more than thirty-nine people and, thus, is so numerous that joinder of all members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Defendants' records or the records of third parties.

25.     **Commonality and Predominance**:  There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

a.      Whether Defendants sent unsolicited fax advertisements;

b.      Whether Exhibit A advertised the commercial availability of property, goods or services;

c.     The manner and method Defendants used to compile or obtain the lists of fax numbers to which they sent <u>Exhibit A</u> and other unsolicited fax advertisements;

d.     Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

e.     Whether Defendants' lack of opt-out notice violated the TCPA;

f.     Whether each Defendant is, respectively, directly or vicariously liable for violating the TCPA;

g.     Whether Plaintiff and the other Class members are entitled to statutory damages;

h.     Whether Defendants should be enjoined from faxing advertisements in the future;

i.     Whether the Court should award trebled damages;

j.     Whether Defendant's conduct as alleged herein constituted conversion;

k.     Whether Defendants' conduct as alleged herein was unfair under ICFA; and

l.     Whether Defendants' conduct as alleged herein constituted a violation of ICFA.

26.     **<u>Typicality of claims</u>**:  Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful practices. Plaintiff and the members of the Class are all individuals who received

7

unsolicited fax advertisements from Defendants that also did not contain an opt-out notice pursuant to the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the putative Class members must necessarily prevail as well.

27.     **Adequacy of Representation**:  Plaintiff is an adequate representative of the Class because its interests do not conflict with the interest of the members of the Class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. The interest of members of the Class will be fairly and adequately protected by Plaintiff and its counsel.

28.     **Prosecution of Separate Claims Would Yield Inconsistent Results**: Even though the questions of fact and law in this action are predominately common to Plaintiff and the putative Class members, separate adjudication of each Class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when Class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

29.     **Class Action is the Superior Method to Adjudicate the Common Questions of Law and Fact that Predominate**:  A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible

8

and procedurally impracticable. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

30.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

31.     Plaintiff brings Count I on behalf of itself and a class of similarly situated persons.

32.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

33.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission."  47 U.S.C. § 227 (a) (4).

34.     The TCPA provides:

9

3.    Private right of action.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

(A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)    Both such actions.

35.    In relevant part, the TCPA states that "[t]he Commission shall prescribe regulations to implement the requirements of this subsection . . . in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (i) the notice is clear and conspicuous . . . "  47. U.S.C. § 227 (b) (2) (D) (i).

36.    The Court, in its discretion, can treble the statutory damages if the violation was knowing.  47 U.S.C. § 227.

37.    Defendants violated 47 U.S.C. § 227 et seq. by sending advertisements by fax (such as Exhibit A) to Plaintiff and the other Class members without first obtaining their prior express invitation or permission.

38.    Defendants violated 47 U.S.C. § 227 et seq. by not providing an opt-out notice on Exhibit A as required by the TCPA.

39.    Facsimile advertising imposes burdens on unwilling recipients that are distinct from the burden imposed by other types of advertising.  The content of the

10

required opt-out notice is designed to ensure that the recipients have the necessary contact information to opt-out of future fax transmissions. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the senders fail to enable the recipients with the appropriate information to stop the burden imposed by this form of advertisement.

40. The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other Class members even if their actions were negligent.

41. Moreover, Defendants are liable to Plaintiff and the other Class members under the TCPA for not including an opt-out notice even if Defendants ultimately prove that they obtained prior express permission to send the advertisements by fax or prove that Defendants had an established business relationship with Plaintiff and the other Class members.

42. Each Defendant is liable because, respectively, it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority and ratification.

43. Defendants knew or should have known that Plaintiff and the other Class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiff and the other Class members did not have an established business

relationship with Defendants, that <u>Exhibit A</u> is an advertisement, and that <u>Exhibit A</u> did not display the an opt-out notice as required by the TCPA.

44. Defendants' actions caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject fax used Plaintiff's and the Class's fax machines. The subject fax cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' illegal fax. That time otherwise would have been spent on Plaintiff's business activities. Defendants' fax unlawfully interrupted Plaintiff's and the other Class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other Class members from the sending of <u>Exhibit A</u> occurred outside Defendants' premises.

45. Even if Defendants did not intend to cause damage to Plaintiff and the other Class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint Plaintiff's counsel as counsel for the Class;

12

B.   That the Court award $500.00-$1,500.00 in damages for each violation of the TCPA;

C.   That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

D.   That the Court award costs and such further relief as the Court may deem just and proper.

**COUNT II**
**CONVERSION**

46.   Plaintiff incorporates paragraphs 1 through 29 as though fully set forth herein.

47.   Plaintiff brings Count II on behalf of itself and a class of similarly situated persons.

48.   By sending Plaintiff and the other Class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner and paper to its own use.  Defendants also converted Plaintiff's employees' time to their own use.

49.   Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

50.   By sending the unsolicited faxes, Defendants permanently misappropriated the Class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

51.     Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

52.     Plaintiff and the other Class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose.  Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

53.     Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal fax. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint Plaintiff' counsel as counsel for the Class;

B.     That the Court award appropriate damages;

C.     That the Court award costs of suit; and

D.     That the Court award such further relief as it may deem just and proper.

<u>COUNT III</u>
<u>ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT</u>
<u>815 ILCS 505/2</u>

54.     Plaintiff incorporates paragraphs 1 through 29 as though fully set forth herein.

55.     Plaintiff brings Count III on behalf of itself and a class of similarly situated persons.

56.     Defendants' unsolicited fax practice is an unfair practice, because it violates public policy, and because it forced Plaintiff and the other Class members to incur expense without any consideration in return. Defendants' practice effectively forced Plaintiff and the other Class members to pay for Defendants' advertising campaign.

57.     Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Illinois statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

58.     Defendants' misconduct caused damages to Plaintiff and the other members of the Class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time.

59.     Defendants' actions caused damages to Plaintiff and the other Class members because their receipt of Defendants' unsolicited fax advertisements caused them to lose paper and toner consumed as a result. Defendants' actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the

time Defendants were using Plaintiff's fax machine for Defendants' illegal purpose. Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' illegal fax and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the Class Representative, and appoint Plaintiff's counsel as counsel for the Class;

B. That the Court award damages to Plaintiff and the other Class members;

C. That the Court award attorneys' fees and costs; and

D. That the Court enter an injunction prohibiting Defendants from sending unsolicited faxed advertisements to Illinois consumers.

Respectfully submitted,

ARWA CHIROPRACTIC, P.C., an Illinois professional corporation, individually and as the representative of a class of similarly-situated persons,

By:     /s/ James M. Smith
        One of its attorneys

16

Phillip A. Bock
Richard J. Doherty
Jonathan B. Piper
James M. Smith
BOCK & HATCH, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500

# EXHIBIT A



**Surefire Heatlh**
10808 So. River Front Parkway
South Jordan, UT, 84095
Tel: 801-878-0488   Fax: 888-875-1527
Toll Free: 1-888-495-1138



**To:** Murtaza Hameed

**From:** Surefire Health

**Fax:** 13216005891

**Date:** May 08/13 08:47 AM

**Organization:** Arwa Chiropractic PC

**Subject:** Elation (Holistic innovation in Pain Management)

Elation is an innovative pain management cream that has helped thousands
of people find relief from all diagnosis of pain with a great residual
effect. (Please Read the Testimonial Attached from a pain specialist Dr
Larry Baize) Let us know if this product is a good fit for your program
and we will be happy to deliver a sample. Have a great day.

Confidentiality Warning: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information which is privileged, confidential, proprietary or exempt from disclosure under applicable law. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, you are strictly prohibited from disclosing, distributing, copying or in any way using this message. If you have received this communication in error, please notify the sender, and destroy and delete any copies you may have received.



# Professional Therapy Services, Inc.

**1543 Ogden Road**

**Montrose, CO 81401**

**Phone: 970-252-0888          Fax: 970-252-9226**

Professional Therapy Services, Inc. began a trial of the Elation Cream the beginning of December 2012. The results were nothing short of miraculous! We used the cream in the clinic on every pain patient we had for a week and a half and every single patient raved about the reduction in their pain and wanted to buy the product. Our clinic treats everything from sprains to severe neuropathic pain, with the majority of our patients falling into the severe, complicated pain category, and this cream addressed every condition, every time. We purchased a case and have sold out in only a few weeks! Not one patient returned the product. In fact, every one of my patients have been relieved to find a product that works great and doesn't have a horrible medicine smell. When we first spoke with a representative from this company, we thought.....something that is too good to be true, probably is. We were WRONG! This product delivers the best pain relief 100% of the time. We highly recommend it! On a personal note, I had an intensive shoulder surgery August 30, 2012 and the first person I used this cream on was myself. It almost instantly reduced my pain and I slept all night without the pain waking me! So my testimonial is personal as well as professional.

Sincerely,

Rhaize MA OTRL

Lawrence W. Baize, MA OTR/L

Case: 1:14-cv-05604 Document #: 1 Filed: 07/22/14 Page 21 of 22 PageID #:21



# Pain Relief for the 21st Century

The overwhelming success of *Surefire Health's* products as a supplemental support for healthy joints stirred a desire on the part of our customers for *SureFire Health* to produce a superior, topical pain relieving formula.



Though we were excited to accept this challenge we knew that the development of such a preparation would be laborious. Our success was determined in no small part to the fact that *SureFire Health's* team of scientists had at their disposal literally decades of research on pain relief from scientific areas as diverse as organic botany, biochemistry, neuroscience, clinical-pharmacology, and herbal pharmacotherapy.

Twelve grueling months after the project began we were presented with **Elation**™ — a pain relief formula that we believe is second to none in effectiveness.

> "Just a few minutes after applying **Elation** to my foot, the pain from my bone spur was gone!"
> - **Luis R.** - Browns Mills, NJ

## What Makes Elation™ Different?

It's no secret that the majority of so-called pain relieving creams and gels are based on the principle of counter-irritation (causing a secondary source of irritation that temporarily masks the original source of pain). **Elation**™ was created so that it would not have the potential problems of skin irritation and burning that preparations containing menthol, camphor, and capsaicin do. **Elation**™ represents an advanced innovation in the prevention of pain in that its matrix of ingredients provides several powerful mechanisms of action:

- Deep-penetrating rub contains anti-inflammatory agents via antioxidants to help relieve pain at the source
- Offers fast pain relief without the medicine smell or burning sensation normally associated with other pain relief creams
- Aids in neutralization of membrane and tissue damaging free radicals

What separates **Elation**™ pain relief cream from all the competitors' chemical based products is the tremendous relief experienced by the users of **Elation**™ which is due to a specific combination of components consisting of botanical extracts, omega-3 fatty acids and antioxidants, all of which have synergistic actions. The ingredients used in this unique and carefully blended compound have been reported on in the Journal of Pharmacology and Experimental Therapeutics, the British Pharmacopoeia, and the American Journal of Medicine.

Furthermore, professionals such as chiropractors, physical therapists, bodywork practitioners, and massage therapists have had great client satisfaction when using Elation. Simply stated, **Elation**™ contains some of the strongest, most effective, all-natural pain killers, anti-inflammatory agents, and healing properties of any pain reliever on the market. By providing deep penetration of the epidermis, **Elation**™ is able to help with the swelling, aches, and pains caused by overwork, athletic events, sprains, strains, bumps, and bruises. **Elation**™ also does wonders on burn injuries, migraine headaches, arthritis, fibromyalgia and almost any pain issue a client might have.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent disease.

## Order now and enjoy the benefits of helping people live pain free!
### 1.888.495.1138 or www.SureFireHealth.com

Case: 1:14-cv-05604 Document #: 1 Filed: 07/22/14 Page 22 of 22 PageID #:22



# Why Elation™ - Huge re-order rate?

**Q. What makes Elation™ Different?**
A. Professionals such as chiropractors, physical therapists, bodywork practitioners, and massage therapists have had great client satisfaction when using Elation. Simply stated, Elation contains some of the strongest, most effective, all-natural pain killers, anti-inflammatory agents, and healing properties of any pain reliever on the market.

**Q. Does it have an unpleasant smell like the others?**
A. Absolutely not it has a pleasant all natural fruit smell unlike our competitors chemical based products.

**Q. Does the product cause irritation?**
A. No. The product is actually produced to eliminate skin irritations which are associated other products.

**Q. Does the product have any additional benefits?**
A. Yes. Elation is a synergistic combination of natural pain relievers and anti-inflammatory compounds which gives unrivaled relief right at the source of the problem.

**Q. Does Elation produce heat?**
A. No. Users will not experience any of the annoying heat or friction which are common in our competitors products.

**Q. Is Elation affordable for my patients?**
A. The price is the best part. For something comparable containing chemical products it would cost $140 for a 4 ounce jar. You are able to provide this to your clients for a low price of $29.95.

> "Nothing could remove my chronic shoulder pain until I found Elation. Now I can function and sleep without pain. "
> *- **Frank C.** – Denver, CO*
>
> *"I have arthritis in my hands, knees and feet. I've had 2 knee replacements. I massage Elation cream on where it hurts and it lasts up to 6 hours. It really helps me get around easier and sleep better."*
> *- **Beth S** – Salt Lake City, UT*
>
> *"I rub Elation on my back where I have two bulding disks and experience tremendous relief. It help me cut out the pain pills I was taking and lasted for 4 to 6 hours.*
> *-Becky M – So Jordan, UT*

**Q. How do we make money?**
A. We produce the product and therefore we are able to supply it to you with a high profit margin were you can more than double your money and provide it for a price your client can easily afford. This is why we have a very high re-order rate. Plus we give you a generous supply of promotional sample product with every order so your patients can try before they buy. Ask us about our referral program that can make lucrative residual income for you.

**Q. How does it work?**
A. Just rub the cream on the affected areas and within 3 to 5 minutes you should see results. Each time Elations is rubbed on it goes deep into the body to attack the problem areas. We have had tremendous success with those who use Elation.

**Q. How many distributors are in my area?**
A. We are only setting up a very limited amount of distributors in each area and only working with high caliber professionals. It is imperative that you call us as soon as possible to avoid missing out on this very powerful opportunity to be one of the select few distributors in your area to distribute this innovative ground breaking and proven product.

**Q. What type of ingredients?**
A. Botanical extracts, omega-3 fatty acids, and antioxidants which are derived from the following active ingredients: Musa Sapientum Extract (Banana Extract) , Willow Bark Extract, Kukhui Nut Oil, Gardenia Extract, Essential Oils (Grapefruit, Lemon, Lime, Orange, Tangerine, Olive Oil Extra Lite)Tocopherol Acetate (Vitamin E), Palmitate (Vitamin A), Ascorbic Acid (Vitamin C)

**Botanical Extracts:** Elation contains a range of extracts which have originated from plants, flowers, roots, steams, barks, fruits, etc. With these pure extracts we capture the true essence of natural healing properties providing a concentrated substance to be used for herbal medicinal purposes while offering a synergistic formula that penetrates deep into the body offering the greatest relief at the source of the pain.
**Omega-3 Fatty Acids:** There is evidence that rheumatoid arthritis sufferers using omega - 3 fatty acids have reduced pain compared to those receiving standard NSAIDs. Omega-3 fatty acids help reduce inflammation, joint pain, and morning stiffness.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent disease.

## Order now and begin enjoying the benefits of being pain free!
## 1.888.495.1138 or www.SureFireHealth.com